Ladies and gentlemen, please rise. This court is now in session. Please be seated. Thank you. Will the clerk please call the next case. 325-0286 Consolidated with 325-0287. In re Estate of Engle. Receives Robert Klemmer Adderley by Anita Scott vs. Diana L. Kingsley. Appellant by Daniel Kaminsky. Counsel, you may proceed. Thank you. Just for the record, Daniel Kaminsky on behalf of Diana L. Kingsley, the appellant in this manner. May it please the court.  My name is Daniel Kaminsky and I represent the appellant, Diana Kingsley, in this consolidated appeal. The issue in this appeal surrounds the trial court's appointment of Ronald Klemmer as administrator of the estates of Barry and Terry Engle and whether the trial court erred in granting Ronald's petition for letters of administration wherein he identified himself as a cousin and denied Diana's cross petition for letters of administration wherein she was identified as a sister. Both Terry and Barry died in testate. Section 9-2 of the Probate Act provides that when a person dies in testate, letters of administration shall be issued in accordance with the preferences in Section 9-3. Under 9-3F, Diana, being a sister, has preference to act or nominate a representative over Ronald who would fall into the category of Section 9-3G, being a cousin. In this case, when reviewing the record before this court, the trial court erred when it appointed Ronald, a purported cousin, instead of appointing a nominee of Diana, the decedent sister, in violation of 9-2 and 9-3 of the Probate Act. The trial court's decision to appoint Ronald was based solely on the uncontroverted pleadings and arguments of counsel. The trial court did not receive or consider any sworn testimony at the February 18, 2025 hearing. The trial court was presented with petitions for letters of administration filed by Ronald who identified himself as a cousin, but who has failed to provide any documentary evidence or sworn testimony to evidence his relationship to either decedent, and Diana's cross petitions for letters of administration, identifying herself as the decedent sister, along with her filed Affidavits of Heirship in each estate which evidence her relationship as the decedent sister and which comply and are filed in accordance with Section 5-5-3, Subpart B of the Probate Act. Ronald was given the opportunity to file a written response to Diana's cross petition, and Ronald did. And in that response, he did not object to the Affidavits of Heirship filed by Diana, nor did Ronald's verified response challenge or object to Diana's relationship to the decedent. I have a question. The trial judge, it considered a variety of things, minimizing the cost of administration, Diana's lack of a relationship with the decedents, and even the fact that Diana filed her petition after Ronald. Are any of those proper considerations in this decision? Not in the context of these specific statutes. And so I'll touch on each of those points. First, with respect to the relationship, personal relationship, between the parties and the decedents, there's nothing in the record to indicate either party had any personal relationship with either decedent. The only mention with respect to Ronald's side was in his response, and it's noted that he was actually contacted by the former counsel for, it was at that time, Barry and Terry's estate, Corrine Kosar, who had represented the decedent. And she brought him into the case believing that he would be next in line. And so as far as relationship, the personal relationship, no, this is strictly a blood legal relationship in the context of determining who has the right to act or nominate. And I think the consideration of the court in even considering those factors would not be relevant to the specific inquiry that was before it. What would they be down the line? And what kind of action would they be relevant, if any? None. So Illinois? So removal of a properly appointed administrator, okay, or executive, can never be removed? No, no. An administrator can be removed. There's still any impact. So there would be an action where some of this would be relevant. A personal relationship to the decedent wouldn't be? No, no, no, no, no, no, no, no. The factors that Justice Brennan mentioned that were in the proceeding before, before the trial judge, in his rationale. Okay, yeah. Well, so the factors of, I don't think the personal relationship is a relevant factor. Also, the cost and expense. In any county, the public administrator's office takes on a number of cases. So in the context of my client choosing her nominee, there's no limitation. She does reside in Wisconsin. She does have a sick husband. And so it was her decision to appoint an experienced probate attorney to act as her nominee to handle the administration of the estate. I don't think that's my question. My question was the nature of the relationship between the deceased, and I'm not talking about lineage, and the person who's in line to be appointed, or in line to be qualified, in a sense, by the airship to be appointed. The personal relationship, whether they had spoken once in their lifetime or never even met, does not have any bearing on the appointment? No, that's not my question. Again, my question was, do those factors come into play subsequent to the appointment in a removal situation? So, no, the relationship of these parties would not come into play for a removal. They're specific delineated factors. So would the representative be removed for some conduct that wastes mismanagement? But the appointment itself is strictly based on – Yeah, you're not – never mind. Move on. Thank you. So at no point did Ronald refute Diana's relationship to the decedent. Ronald's written response only challenged Diana's nominee as not being an heir or otherwise having any connection with the decedent. However, 9-3F does not limit who Diana can nominate, noting that her nominee can be any person. Furthermore, Ronald's narrow interpretation of 9-3 has been rejected by the appellate court, and that's the case of In re Estate of Cage, which is cited in our pleadings, where it was argued that the case – that the nominees were limited to only those individuals who were identified in the 9-3 preference lists. Therefore, at the time of the hearing, February 18, 2025, there were no disputed facts because Ronald did not object to the veracity of the information in Diana's cross petitions or affidavits of heirship. Trial court's decision was based solely on the petitions filed by Ronald, the response filed by Ronald, the cross petitions filed by Diana, a sister, in Diana's affidavits of heirship. Based on those uncontroverted facts set forth in Diana's cross petition and the affidavits of heirship, Diana, as a sister, has preference to act or nominate any person as administrator of the estate over Ronald, a cousin. Therefore, Diana's nomination of John P. Bransfield takes precedence over Ronald being appointed administrator of the estate. Therefore, the trial court erred in its application of Section 9-2 and 9-3 when it appointed Ronald as administrator of the estates, as there was no basis in the record to conclude that Ronald, a cousin, had preference to act or nominate over Diana, the decedent's sister. In the briefs, there was a dispute as to what standard of review this court should take. The court should apply a de novo standard of review to the ruling because this matter involves the trial court's interpretation and construction of 9-2 and 9-3 of the Probate Act, and the application of those statutes to the undisputed facts in determining who had legal preference to act. The Illinois Supreme Court in the estate of Poole, which is cited in our brief, has previously applied the de novo standard of review to the question involving statutory interpretation in determining who had legal preference to act as an administrator. Ronald's request to apply an abuse of discretion standard of review is misplaced. First, Ronald does not cite a single case in his brief to support the application of an abuse of discretion standard to the statutory interpretation of legal preference to act as administrator. Rather, the only case cited by Ronald is in Rea Estate of Savio, a Third District case, which applied a manifest weight of the evidence standard, not an abuse of discretion standard, and which was factually distinguishable to the matter before the court. In Savio, the issue before the court dealt with a petition to reopen an estate and the determination of whether a wrongful death claim is a newly discovered asset. In fact, during the Savio court's analysis on which standard of review to apply, the court noted the holding in estate of Poole, which applied the de novo standard of review in determining who had legal preference to act as administrator. Therefore, the de novo standard of review is the appropriate standard to apply in this matter. At the February 18, 2025 hearing, there were no disputed facts in the record that would have required an evidentiary hearing. Therefore, an evidentiary hearing would not have added anything to this case or resolved any disputed fact because none existed when the trial court issued its ruling. In his brief, Ronald cites to in-race Stinnett to argue that a trial court errs in not holding an evidentiary hearing before ruling on respective petitions for appointment. However, Ronald's reliance on Stinnett for this proposition is erroneous, as the error in failing to conduct an evidentiary hearing in Stinnett was not on the issue of legal preference to act, but rather on whether one of the petitioning parties had an actual unresolvable conflict of interest that would have prevented them from being an administrator. In this case, there is no allegation of an unresolvable conflict of interest that would have required an evidentiary hearing, and an evidentiary hearing was not required in this matter because the uncontroverted facts established that Diana, as the seed and sister, had preference to act or nominate an administrator in accordance with 9-3F of the Probate Act. Ronald has also argued that Diana had the burden to establish her relationship to the decedent and that she failed to do so, but this argument is misplaced because Diana has established her relationship to the decedent in accordance with the procedure set out in the Probate Act. As she has filed an affidavit of heirship in each estate that complies with Section 755 ILCS 5-5-3B, the statutory provision setting forth the procedure for determining heirship in a decedent's estate. If Ronald had an objection to the allegation... Can an affidavit be challenged in any proceeding? The affidavits of heirship certainly could be challenged, but there needs to be a written objection. No such objection was ever filed, was it, though? That's correct, Your Honor. And that was under 5-5-3B, no objection filed? No objections were filed. The affidavits of heirship, which, when opening an estate, you file your petition, you file your affidavits of heirship, and there's some other documents that need to be filed. But in this case, Diana's the only one that's actually submitted an affidavit of heirship in either estate proceeding to proceed after the death of both Terry and Barry. And so that... Ronald just said he didn't want to file an affidavit of heirship until he determined whether he actually believed Diana was the sister. That is correct. He's entitled to do. He is. He is. It's just unusual for an estate to be opened without any order of declaring heirship being entered, period. And that's the case that we have in Barry's estate. There is a pending order of declaring heirship in Terry's estate because that estate is still active and pending. If Ronald had an objection to the allegations contained in Diana's affidavit of heirship, he failed to raise those objections in his written response to Diana's cross-petition. The procedure in place was set up, you know, briefing schedule and then a hearing. And so when the case was called for hearing, there were no uncontroverted facts in the record that would have necessitated an evidentiary hearing. But also on that point, and unlike Diana, Ronald is the only... In what you just said, you seem to acknowledge that it was set for hearing, but in your written pleadings you dispute that it was actually set for hearing, which is... We acknowledge it was set for a hearing. Our belief was it was a hearing of argument. The judge has a stand... His call is... Not an evidentiary. Correct. Correct. Based on the pleadings that were filed and that there were no... There was certainly a hearing. We were in person for that hearing, but there was not an understanding... There was no dispute that would have required evidence. Unlike Diana, the only party who has failed to establish a relationship to the decedent is Ronald. There's nothing in the record to support Ronald's conclusion that he's the decedent's cousin. And for the first time on appeal, Ronald now asserts in his brief that he's a blood nephew of the decedent's father, but he does not and cannot cite to any portion of the record to support that claim because there isn't anything in the record to substantiate that. Moreover, Ronald's counsel was given the opportunity to call Ronald as a witness in the February 18th hearing and chose not to, leaving a record without any basis to establish Ronald's relationship to the decedents. As a result, the trial court's error in appointing Ronald as administrator over Diana in violation of Section 9-3 was compounded by the fact that there is no basis in the record to conclude Ronald had any relationship to the decedent, let alone preference to act or nominate an administrator for the decedent's estate. To overcome the presumption that Diana had preference? Correct. Thank you. Correct. Any further questions?  None. Thank you. You'll have time in response. Thank you. Counsel, you may proceed. Good afternoon, Justices. May it please the Court. Counsel. My name is Anita Conto-Scott. Thank you for allowing me to present my argument today. I represent Ronald Klinger, who is the administrator and is present in court. The issue before the court is not the interpretation of the statute for preference. There is no dispute as to the language of the statute. Counsel argues that there is nothing in dispute, that there was no objection. The mere fact that there was a cross-petition filed by Diana and the matter was set for hearing puts the matter in dispute. That was the purpose of having a hearing. The order for the hearing was drafted by counsel's office, and now they want to make a distinction as to what type of hearing it was to be. That order also briefed the matter in terms of when the response was due and when the reply was due. They agreed and consented to having a hearing to resolve the issue between the petition and the cross-petition. Let's assume that it was set for an evidentiary hearing. We have an affidavit from Diana saying, I'm the sister. What contrary evidence was there for the judge to rely upon to ignore what you have indicated as a non-disputed statutory preference? There was an affidavit of airship filed in Terry Engle's case. That affidavit of airship was also signed into an order declaring the airship. At that point in time, that affidavit of airship showed Barry Engle, his twin brother, as the sole heir. It did not have any reference to Diana or any other heirs. He said he didn't know his mother's name. That prior counsel did file that, and yes, it did say he did not know his mother's name. That is correct. The affidavit of airship also showed that Barry Engle was the only heir. That was an order that declared that as an airship. If it was the brother, he would be the only heir. Well, if Diana was the sister, then he would not have been the only heir. Our position is that that, on the record, does contradict her now motion to amend. It may create a question, right? But how does the judge choose between those two and decide that sister's affidavit is not to be considered? Well, our position is that we were set for an evidentiary hearing, and she was superior at that hearing. And that she would have been able to testify and be cross-examined and present evidence through testimony to establish that. And she failed to appear. But what we have is just two competing affidavits and no other testimony, right? That is correct. So how does the judge make this decision? Mr. Klinger was present in court. Well, he didn't testify. He didn't testify, but he made— And he wasn't in a position, really, to say one way or the other about Diana's veracity in terms of being a half-sister at that point, correct? Well— He could say, I don't know anything about her, but— What he did mention in court was that he was a cousin. He was asked on the record, although he was not sworn in, as his relationship to the descendants. And he did acknowledge that he was, in fact, a cousin. There was a question about whether or not he believed that Diana, the sister, was still living. And there was a question as to who she was and the identity. So, okay, let's say I'm walking down the path with you, and I'm with you so far. We get to this motion to reconsider, when Diana's present. At that point, given what the judge has told in terms of why she wasn't there, and why she was a half-sister, how is it not an abuse of discretion to reopen this hearing and get to the bottom of determining whether she is or isn't the half-sister for purposes of this statutory presumption? Well— Less than 30 days had gone by. There isn't any disadvantage, really, to the estate. It's not a long time. How is it not an abuse of discretion to allow the reopening of this issue at that point? Well, under the rules for the motion for reconsideration, it requires that there has to be newly found evidence or new information that was not aware or known at the time of the hearing. Council has already consented that there was a hearing. The parties were ordered to be in person. They had an opportunity to ask for a continuance when they realized that Diana was not present in court and failed to do so. They made a decision to move forward without Diana being present. Now, let me ask about that. Prior to this point in time, had Ronald's lawyers ever suggested to opposing counsel that they were contesting Diana's heirship claim? Unfortunately, I cannot speak to what— Was there anything in the record to suggest that they were informed that this would be a contested issue at the hearing? The fact—what I would say to that is our response, although it didn't have specific contested issues, it did request that the cross-petition be denied. And that in itself would show that we were objecting to Diana being appointed as the administrator. But the issue could have been not, is she in fact the half-sister, but are there extreme circumstances that might otherwise not make it an appropriate appointment? Do you see the difference between those issues? I do see the difference. And it's just that simply at that time, we really just didn't know. What we had was the affidavit that was signed by Barry Engel and the order declaring heirship in which she was not included or mentioned at any point in time as a possible sister. And the record that was submitted showed that the alleged mother-in-common had married five times. And there was a divorce decree that was not a full divorce decree that showed that Sonia Lamere was married to Clifford Crawford, who bared three children, which was Terry and Barry, who were twins, and a younger sibling, Gregory, who predeceased them. And that divorce was done by default, and the three children were left with Clifford Crawford in his sole care in custody. And so it did not establish or touch on whether or not there were any other half-siblings or siblings other than the three that were named in that divorce decree, which was one of the things that was submitted. Wasn't there another child that was born from another relationship, though, however, not a marriage? Didn't Sonia have another child that was born outside of a marriage? They are – she was married five times, and my understanding is that if we follow the family tree, if you will, there was allegedly this Diana that was born from the first marriage, the Crawford marriage, and then there was the three children, the Engles, that was born by Mr. Engle, and then there were subsequent marriages where there was a Kimberly born. And I believe the first marriage is alleged that there was also a gentleman who would be the brother of Diana whose whereabouts are unknown. And Kimberly's father? I'm not sure exactly who Kimberly's father is. At the time of Sonia's death, from what we can tell, she was divorced. She was unmarried. So we have a woman that married five times and died as an unmarried woman. Her obituary says she has seven children. It doesn't name the children. We don't even know how it got to seven children. So there's a lot of questions in terms of who the heirs are, how many they really are. Sonia died in 1997, so that pre-deceased, pre-was many years before the Engles. Can I go back to the competing affidavits? And this is not a rhetorical question.  What's the value, the worth, or can I even rely upon the affidavit of somebody who's now dead? Is an affidavit of someone who's now dead something I can actually consider as a trial judge to defeat an affidavit of someone who's alive? Well, I'm sorry, if I understand your question. Well, Barry's affidavit said that he was the heir and by inference that there were no other siblings. Correct. Right? Correct. But he's dead. And now we have the affidavit of Diana, who's very much alive. Can I rely upon a dead person's affidavit in that context? Absolutely. We have the Deadman Statute, which I believe you could extrapolate to this case. It has been used mostly in probate and civil cases so that people cannot come and make statements that are self-serving where they have self-interest. And so there is precedence for relying on documents and statements from people that are now deceased in terms of challenging those statements or having something that's put forward that is self-serving and has a financial benefit that contradicts someone who's now deceased. So you're saying that affidavit of Barry, correct, who's now deceased, okay, could not be construed as self-serving. That's really what you're saying. Well, the affidavit of Barry, who's now deceased, I believe it's more than an affidavit in the sense that after the affidavit of airship was filed, there was an order that declared that airship to be so by Judge Iwanek. And so we're past just simply submitting an affidavit from the court. We have now crossed over where that affidavit has been accepted by the court, and there is a court order declaring that airship to be such. But at the time that that was done, that was prior to the time that Diana's affidavit was submitted, correct? That is correct. Diana wasn't even in the picture. Diana wasn't involved in Barry's estate. They did not know of her. She had nothing to do with the funeral. That is absolutely correct. Okay, thank you. So the council cites different cases. They cite the state of Poole. They also cite the state of Cage. And they also touch on the state of Stenette. All these cases, although they've touched on these cases for the purpose of establishing the preference through the statute. We don't argue what the statute says. We know that the statute has a preference. But all these cases also touch on having a hearing. It doesn't say because you stepped up and said, and say, I'm the sister, I'm the father, that you automatically get to be the administrator or your cross petition is automatically granted. There is a process for that. And that process is having a hearing. By the very nature of this subject, the hearing is going to be evidentiary. Why else would you have a hearing when you have cross petitions and affidavits that are filed? In the state of Poole, the court goes on and they actually have a DNA test done. Because the mother died in a car accident and she had a survival fetus at that point in time. And so there was a DNA test that was done to find out if this biological father, as opposed to the mother of the deceased mother, was in fact akin and blood related. And that was done through a DNA test. And when the DNA test was done and there was a hearing, he was found to be the administrator under the preference statute. In the state of Cage, which is distinguished by the state of Savio, there was also a hearing. All these cases have something in common. They all have hearings. And these hearings, again, are evidentiary in nature. A hearing was set in this case. The hearing was consented to. It was agreed. It was by court order. There was no objection that there was not going to be a hearing. To take the stance of... I'm sorry. Would you like to finish up and sum up? Because your time has expired. To take the stance of we didn't think it was a hearing because we don't have... There wasn't anything that showed us it was objected to. And therefore, we weren't going to have a hearing in the sense of a hearing because it was court ordered and we decided we had no controversial issues. It just doesn't make sense in the light of this case. Thank you. Thank you. Questions? No. Not at this time. Thank you. Thank you, Counsel. Counsel, you may apply. Thank you, Justices. I just want to briefly touch. Initially, with respect to the initial affidavit of airship that was filed in Terry's estate by Berry, Counsel has argued that Diana's is contradictory to that. I would argue it's merely supplemental. If an affidavit of airship is filed that doesn't even identify a mother, then, frankly, the initial order declaring airship should have also included unknown mother and unknown descendants of the mother. Because for purposes of declaring airship, you need to check each box at the level of intestacy that you're at. And here, there was an identified sibling, but Section 5-2-1D of the Probate Act provides that it's parents, if living, and then siblings, if living, and if deceased, their living descendants. And so here you have, upon information and belief, my mother, who I don't know whose name, has passed away. And then, if you don't know who your mother is, you're not going to know whether or not she had any additional descendants. So, respectfully, I would argue that the affidavit of airship filed by Diana simply supplements the open holes that were left from that initial order declaring airship, which, of course, Diana did not receive notice of at the time that hearing was presented and that petition was filed with the court. With respect to the questioning regarding the motion to reconsider, one item that counsel did not mention was a basis for a motion to reconsider is, of course, an error in the application of the existing law, and which is what was the basis for our motion to reconsider, that the court did not consider the affidavit of airship from Diana at the time when the court made its decision to appoint Ronald as the representative of both estates. Counsel argues that the hearing was evidentiary. The power to ascertain and declare airship evidence, Section 5-5-3B, the affidavit of airship we tender was evidence. That's documentary evidence in compliance with the Probate Act. Instant that it notes that... Now, the court may consider that, but it can also consider other evidence. Certainly, certainly. There's also a second portion, which is evidence in narrative form by questions and answers reduced to writing. And, of course, if there were a dispute, there could be evidentiary testimony. Here, there was not a dispute in the record. And, you know, what's telling from the appellee's position today is that there isn't a single part of the record that they can point to that supports the trial court's decision to appoint Ronald as the representative. They've indicated there's no dispute as to the language of the statute, that preference is preference. They have not pointed to any part of the record that would authorize a cousin that hasn't provided any documentary evidence or sworn testimony to be appointed over the nominee of a sister who has provided affidavits of airship and a corresponding cross-petition. And so, you know, ultimately, we're at a point of reviewing what was in the record for the trial court to consider. And in this case, it was the petition, the petitions filed by Ronald, cross-petitions filed by Diana, and the affidavits of airship filed by Diana, and the arguments of counsel. And when considering those items as a whole, the court was left with a decision to either appoint a cousin or the nominee of a sister. And Section 9-2 and 9-3 of the Probate Act state that the court shall follow the preference in 9-3, and a sister does have preference to act or nominate any person in preference to a cousin. And so, respectfully, I'd ask that this court vacate and reverse the February 18, 2025, orders that granted Ronald Klinger's petitions for letters of administration and denied Diana Kingsley's cross-petitions for letters of administration. Vacate and reverse the February 18 orders that appointed Ronald Klinger as administrator of the estates. Vacate and reverse the June 4 order that denied Diana Kingsley's motions to reconsider and remand this cause to the trial court to grant both the cross-petitions filed by Diana Kingsley in both estates and to appoint Diana Kingsley's nominee, John P. Bransfield, as administrator of the estates and to deny the petitions for letters of administration filed by Ronald Klinger. And for any such further relief, as this honorable court deems equitable and just. Thank you, Justices. Questions?  No, thank you. Thank you, Counsel. Thank you, Counsel Bull, for your arguments on this matter this afternoon. It will be taken under advisement by this court. A written disposition from this court shall issue. And at this time, I believe we're at the last case of our call. We stand in recess subject to call.